**SANDERSON et al. v. CROWLEY et al.**

No. 12974.

United States Court of Appeals
Fifth Circuit.

Feb. 6, 1950.

J. F. Hulse, El Paso, Tex., Robert E. Cunningham, El Paso, Tex., William E. Ward, El Paso, Tex., for appellants.

Theodore Andress, El Paso, Tex., for appellees.

Before HOLMES, WALLER, and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

This is a controversy wholly between citizens of Texas on one side and citizens of Colorado on the other. The amount involved exceeds $3000, exclusive of interest and costs, and federal jurisdiction of the case depends solely on diversity of citizenship. The trial below was in the United States District Court, sitting in Texas, but the decision both below and on appeal was and is governed by the laws of New Mexico.

The verdict of the jury, which was fully supported by the evidence, established the following facts: On September 3, 1948, the appellants and appellees entered into a written contract, which was made in New Mexico and was to be performed in that state. It was partially performed and also breached there. It is in words and figures as follows:

"Hotel Murray
Silver City, New Mexico.
Sept. 3, 1948.

"This contract and agreement certifies that E. M. Sanderson and Jack Sheftel have sold to Crowley and Crowley the following described cattle about 450 mixed cfs. @ .28½ per lb. about 450 mixed hf & str. yrs. at .28¢ per lb. All native hereford cattle about 550 of the Tom McCauley cattle to be delivered at Silver City Oct 10th to Nov 1st about 350 of the Chavez cattle delivered at Magdalena N. Mex. same date. All unmerchantable cattle excluded. The customary shrink equal to 3% or 12 hr dry lot. $12750.00 pd now as part payment bal. at time of delivery.

"Sanderson & Sheftel,
By (Signed) E. M. Sanderson,
"Crowley & Crowley,
By (Signed) P. C. Crowley."

This contract is complete in itself, and is not a divisible one.[1] It contains the essential elements of the entire agreement between the parties, and it must be read in the light of the circumstances surrounding them at the time of the making thereof. These circumstances were such that the parties knew that the ratio between the number of calves and the number of yearlings called for in the contract was an essential element of the agreement. They knew the relative values of calves and yearlings for the buyers' purposes under this contract, and knew that the obligation to deliver about 450 mixed calves could not be fulfilled by the delivery of an equal number of mixed yearlings.

They knew that, where an equal number of calves and yearlings were bought for the particular purposes of this contract, the delivery of 372 yearlings and only 123 calves would be a breach of the contract unless the discrepancies should be subse-

126

quently corrected; and that it would be a fraud to induce the acceptance of the first two deliveries by false promises not intended to be kept. The verdict of the jury necessarily includes a finding that an excess number of yearlings were foisted upon the appellants, to their damage, by false and fraudulent promises. To say that the appellants were not injured by being deceived into accepting an excess number of yearlings over calves is to disregard what every cattleman well knew at the time, viz: that calves were harder to buy than yearlings, and that in selling calves raised by them, ranchers generally required buyers to take an equal number of yearlings.

■ We do not have to look beyond the contract itself, in the light of the surrounding circumstances, to see that the agreement between the parties called for about 900 head of cattle from the McCauley & Chavez herds, which were raised on ranches in New Mexico. The quality of these cattle was well known to the parties by reputation, and in addition some of them in the McCauley herd were inspected by the purchasers during the negotiations leading up to the sale. These cattle were well known in the neighborhood, and were capable of identification by the brands on them. They were in existence, but were not owned by appellants. Thus the latter sold to appellees for future delivery cattle not owned by them. When the time for delivery came, the appellants either were unable to buy all of the McCauley cattle that were needed to fill the contract, or could not buy them at a price that they were willing to pay; but this did not justify the appellants in attempting to deliver an excess number of yearlings, or in promising to make up the discrepancy by delivering calves from the Tom McCauley herd if they knew that no more of such calves would be for sale before November 1st. When cattle of a certain brand, out of a particular herd, are sold, the seller is not permitted to deliver any other kind of cattle under that particular contract, though the offer to deliver others might reduce the damages flowing from a breach of the contract, but no damages are claimed here by appellees for a breach of the contract other than for failure to return the unused portion of the earnest money.

The contract called for 550 head of mixed calves of the Tom McCauley cattle to be delivered at Silver City and 350 of the Chavez cattle to be delivered at Magdalena. Mixed, as used in the contract, meant male or female. Cattle less than a year old are known as calves; those past their first year and not yet two years old are called yearlings. The written contract contemplated and provided for several deliveries of the calves and yearlings within the time and at the places therein stated. The first delivery thereunder was at Magdalena, New Mexico, on October 27, 1948, when appellants delivered to appellees 191 yearlings and 54 calves, which were accepted and paid for by the appellees at the contract prices, although the market price of both yearlings and calves had declined several cents a pound, and although the appellees objected to the discrepancy in the number of calves, and only accepted delivery of the yearlings upon the express promise of appellants to rectify the discrepancy in subsequent deliveries under the contract. Many of the cattle actually delivered were not from either of the stipulated herds, but since they were accepted by the purchasers, this matter is not material except to show a failure on the part of the sellers to comply with their contract.

On October 29, 1948, another delivery was made and paid for, which consisted of 175 yearlings and 65 calves, and was accepted only upon the further strict and express promise of the appellants that the discrepancies in the agreed ratio of calves and yearlings would be remedied in the next and final delivery under the contract. Thereafter, on November 8, 1948, the final delivery under the contract was tendered by appellants to appellees, which consisted of 119 yearlings and 159 calves. The appellees refused to accept said delivery as final, and no further deliveries were made or tendered by the appellants, although the appellants offered to purchase other cattle out of herds not specified in the contract; but these were cattle that appellants thought they could buy if given sufficient

time. They were not to be out of the Chavez or McCauley herds, and obviously the appellees were not required to accede to this request, which would have necessitated extending the time for delivery fixed by the contract, which had already expired.

■ That the contract was breached by the appellants in failing to deliver to appellees the cattle called for in accordance with the terms of the contract was not only established by the verdict of the jury, but clearly appears from the overwhelming weight of the evidence. It was also established by the verdict of the jury that the appellees were induced by fraud and deceit to accept under the contract an excess number of yearlings, which at the time of delivery were of the reasonable market value of $24.75 per head less than the contract price actually paid for them by appellees to appellants.

At the time of the breach, there remained in the custody of appellants the sum of $5325 earnest money, which had been deposited by appellees as security for the performance of the obligations upon them under the contract. The jury rendered a verdict in favor of the appellees for $6650, which included said sum of $5325, earnest money above mentioned. The additional sum of $1325, which made up the amount of the verdict, was awarded as damages for the wrong committed by appellants in fraudulently inducing the appellees to pay the contract price for a number of yearlings, the market price of which was $24.75 per head less than the contract price. The item awarded by the jury in this respect is much less than the evidence warranted, but that was a matter for the jury to decide, and we have no power or inclination to disturb the result.

■■ While the substantive law of this case is governed by the jurisprudence of New Mexico, the procedural law is controlled by the Federal Rules of Civil Procedure, 28 U.S.C.A. It is therefore unnecessary for us to decide whether this action is one that arose *ex contractu* or *ex delicto*, or whether it is partly in contract and partly in tort. As to the item of $5325, we may regard this as a suit for money had and received, which would be *ex contractu;* but in one sense it might be deemed an action for the wrongful conversion of money entrusted to appellants, which would be *ex delicto.* The item of $1325 may properly be considered as arising only in tort, because no damages except the loss of their earnest money may fairly be said to have resulted to appellees from a breach of the contract by appellants. It is well settled, however, that a tort may be committed by one of the parties to a contract, either in the breach or in the partial performance thereof; and that is what happened in this case.

Although the market had gone against appellees, they were ready, able, and willing to accept delivery of the cattle bought by them from appellants, and to pay the contract prices which, at the time of delivery, were greatly in excess of the market prices for calves and yearlings; but the appellants failed to deliver cattle of the kind and quality called for in the contract, particularly failed in respect to the ratio of the number of calves and yearlings, promising to correct these discrepancies in subsequent deliveries, and thereby wrongfully and fraudulently inducing the appellees to accept an excessive number of yearlings and to pay for them the contract price, which was above the market price. This item presented an issue peculiarly for the jury.

■ An appellate court should not be too technical in respect to the pleadings in a case like this, which was fairly tried below upon the real issues between the parties, and where substantial justice has been done by the verdict and judgment under review. Under the Federal Rules of Civil Procedure, it is provided in Rule No. 1 that they shall be construed to secure the just, speedy, and inexpensive determination of every action. Rules 2 and 3 provide for only one form of action, to be known as a civil action, which shall be commenced by the filing of a complaint. Rule 18(a) provides that the plaintiff in his complaint may join as many claims, either legal or equitable, as he may have against an opposing party. The appellees here have only two claims, which make up the judgment, one

for the unused earnest money and the other for damages resulting from the tort committed by the appellants in making deliveries under the contract. We find no reversible error in the record,[2] and the judgment appealed from is affirmed.[3]

2. Cf. McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205; and see Rule 61 of Federal Rules of Civil Procedure, which is as follows:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

3. See also: Turner v. Denton, 42 N.M. 630, 83 P.2d 459, 17 C.J.S., Contracts, § 321, page 744; 32 C.J.S., Evidence, §§ 929, 961, 1013, pages 852, 915, 1027.